# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **THE JEFFERSON COUNTY BOARD OF EDUCATION, an agency of the State of Alabama,** | }<br>}<br>}<br>} |
| **Appellant,** | }<br>} |
| v. | }    Case No.: 2:19-cv-00727-RDP<br>} |
| **AMANDA S. and CECIL S., individually and as parents, guardians, next friends and legal representatives of T.S., a minor.,** | }<br>}<br>} |
| **Appellees.** | |

## MEMORANDUM OPINION

The matter before the court is on Plaintiff's Motion to Stay Enforcement. (Doc. # 16). The matter has been briefed (*see* Docs. # 16, 21, 22) and is ripe for decision. For the reasons discussed below, Plaintiff's Motion (Doc. # 16) is due to be granted.

**I.    Background[1]**

This is an action for review of an administrative proceeding conducted pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. §§ 1400, 1415(i)(2)(A). The IDEA "offers the States federal funds in exchange for a commitment to provide all 'children with disabilities' individually tailored special education, also known as a 'free appropriate public education' or 'FAPE.' " *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1189 (11th Cir. 2018)

---

[1] On May 21, 2019, the court held a telephone conference with counsel. The court instructed the parties to: "(1) share information, consult with their clients, and meet and confer with the goal of reaching an agreed plan for providing the educational assistance T.S. needs both this summer and next school year; and (2) . . . file a joint report updating the court on any agreement that has been reached and whether the parties wish to proceed with briefing on Plaintiff's Motion to Stay Enforcement." (Doc. # 12). The parties informed the court that no agreement could be reached with respect to Student's summer instruction. (Docs. # 11, 14). Consequently, the Plaintiff filed the motion now before the court.

(citing 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A)). "The principal vehicle for providing a FAPE is an individualized education program ('IEP') prepared by the child's parents, teachers, and school officials that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Durbrow*, 887 F.3d at 1189 (internal quotation marks omitted); *CP v. Leon Cty. Sch. Bd. of Fla.*, 483 F.3d 1151, 1153 (11th Cir. 2007) ("[T]he IEP is more than a mere exercise in public relations. It forms the basis for the [disabled] child's entitlement to an individualized and appropriate education." (quoting *Doe v. Ala. State Dep't of Educ.*, 915 F.2d 651, 654 (11tth Cir. 1990))). An IEP serves to "set out a plan for pursuing academic and functional advancement." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. R.E-1*, 137 S. Ct. 988, 999 (2017). "Any review of an IEP must appreciate that the question is whether the IEP is *reasonable, not whether the court regards it as ideal.*" *Endrew*, 137 S. Ct. at 999.

> The FAPE requirements relate to special education and related services that:
>
> (1) have been provided at public expense, under public supervision and direction, and without charge, (2) meet the standards of the State educational agency; (3) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (4) are provided in conformity with the individualized education . . . program required under section 1414(d) . . . .

*Jefferson Cty. Bd. of Educ. v. S.B.*, 788 F. Supp. 2d 1347, 1350 (N.D. Ala. 2011) (citing 20 U.S.C.A. § 1401(9)). The test for determining whether a school board has provided a FAPE as called for under the IDEA includes asking "(1) whether the state actor has complied with the procedures set forth in the IDEA, and (2) whether the [individualized educational program] developed pursuant to the IDEA is reasonably calculated to enable the child to receive educational benefit." *Leon Cty. Sch. Bd. of Fla.*, 483 F.2d at 1152-53. "[A] student offered an educational program providing 'merely more than *de minimis*' progress from year to year can hardly be said to have been offered an education at all. . . . The IDEA demands more. It requires an educational

program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 137 S. Ct. at 1001.

The IDEA also provides parents and children the right "to present complaints regarding placement of the child or the provision of FAPE and to initiate an impartial due process hearing." *Leon Cty. Sch. Bd. of Fla.*, 483 F.2d at 1153; 20 U.S.C. § 1415(f)(1). After the conclusion of an administrative proceeding, "[a] party aggrieved by a hearing officer's findings and decision on a due process complaint shall have the right to bring a civil action concerning the matter in a district court of the United States." *Hoover City Bd. of Educ. v. Leventry*, 2019 WL 4415565, at *9 (N.D. Ala. Sept. 16, 2019); 20 U.S.C, 1415(i)(2)(A).

Here, the aggrieved party is the Jefferson County School Board ("the Board"). The Board filed its appeal in this court seeking relief from the hearing officer's legal and factual determinations arising out of an administrative ruling.[2] (Doc. # 1 at 1, ¶ 1). The relevant facts are discussed below.

On December 4, 2018, the student in this case, T.S. ("Student"), by and through her parents, initiated an administrative due process hearing against the Jefferson County School Board. (Doc. # 1 at 1, ¶ 7). Student alleged that the Board "failed to comply with the IDEA's substantive requirements, and, consequently, that the Board denied . . . Student a 'free appropriate public education'" for two years. (*Id.* ¶ 7). The due process hearing took place on February 21-22, 2019. (*Id.* ¶ 8). On March 22, 2019, the hearing officer entered a written decision, framing the issues for determination as: (1) "[i]s the Petitioner's Complaint for Due Process moot due to what the District [suggested] was a lack of opportunity to address the Petitioner's concerns before the complaint was filed?"; and (2) "[w]as the Petitioner denied a free appropriate public education ("FAPE") due

---

[2] The hearing officer throughout the administrative proceedings was Steve P. Morton, Jr. (Doc. # 20-1).

3

to the failure of the Petitioner to make more than minimal progress in reading pursuant to services provided under the [IEP] in place by the School for [Student] during the 24 months prior to the filing of the Due Process Complaint?" (*Id.* ¶ 9; Doc. # 20-1 (SEALED) at 11).

The hearing officer found that "the lack of progress of [Student] with reading and decoding, at least during the 24 months prior to the due process filing date, . . . is evidence of a denial of [a] FAPE by the District." (Doc. # 1 at 1, ¶ 10). Consequently, the hearing officer ordered:

> (1) [w]ithin 30 days of [the hearing officer's] Order, the IEP team is due to re-convene in further efforts to determine what programs would be appropriate for the child in light of her reading deficits; (2) [w]ithin 30 days of [the hearing officer's] Order, the IEP [t]eam, including pertinent District personnel, should thoroughly review all the test results and determine if there is adequate information to address why [the Student] is not making progress in reading and if not, what information is needed to address this; (3) [a]s compensatory benefits for the time lost while the [Student] was denied a FAPE, the District is due to find, fund and provide [the Student] with a one-on-one summer reading program that is intensive along the lines suggested by the Petitioner such as Lindamood [sic] Bell. This is due to be provided during the summer of 2019; and (4) Petitioner is due compensatory services for 90 minutes per school week . . . for the remainder of the 2018-19 school year and the 2019-20 school year in a one-on-one direct reading instruction scenario to address her weakness in decoding and sight words with a program that meets her unique needs.

(*Id.* ¶ 11(a)-(d)). After publication of the hearing officer's findings and orders, the Board filed this lawsuit under the IDEA. The Board argues that because the hearing officer "did not identify or find that the Board committed an actionable procedural violation of the IDEA," but rather only found a "lack of progress" as "evidence of a denial of FAPE by the District," the hearing officer acted improperly, and the decisions and findings should not be enforceable. (*Id.* ¶ 16). Specifically, the Board contends that the hearing officer: (1) misapplied the law by incorrectly applying the appropriate legal standard for determining substantive compliance; (2) ordered relief that is "unworkable, inappropriate, not required, and/or supported by record evidence;" (3) "erred in concluding that lack of significant progress in one area of Student's academic program constituted

4

a denial of FAPE;" and (4) incorrectly found that Student met her burden of proof. (*Id.* ¶ 10).

On July 22, 2019, the Board filed its Motion to Stay, requesting the court to stay enforcement of the hearing officer's administrative decision pending the outcome of their appeal. (Doc. # 16). On August 16, 2019, Student filed her response to the Board's Motion. (Doc. # 21). On August 23, 2019, the Board filed its reply. (Docs. # 22).

## II. Standard of Review

"A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the [moving party].'" *Nken v. Holder*, 556 U.S. 418, 427 (2009). "It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case." *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 10-11 (1942). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Id.* at 433-34. In considering whether to grant a stay, the court evaluates four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434.

"Whether an IEP provided [a] FAPE is a mixed question of law and fact subject to *de novo* review. . . . To the extent that this issue involves the interpretation of a federal statute, it is a question of law . . . review[ed] *de novo.*" *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008) (quoting *C.P. v. Leon Cty. Sch. Bd. Fla.*, 483 F.3d 1151, 1155-56 (11th Cir.2007)). A district court judge "has discretion to determine the level of deference it will give to the ALJ's findings." *Jefferson Cty. Bd. of Educ.*, 788 F. Supp. 2d at 1350. But, quite obviously, "[t]he adequacy of a given IEP turns on the unique circumstances of the child for whom it was created."

5

*Endrew*, 137 S. Ct. at 1001.

**III. Analysis**

The Board argues that a stay is warranted and appropriate because it has met all four factors required for a stay. The court addresses each, in turn, and agrees that the Board is entitled to a stay of enforcement.

**a. Likelihood of Success on the Merits**

The Board argues that under *Endrew*, the hearing officer applied the incorrect legal standard when asking whether Student was "denied a [FAPE] due to the failure of [Student] to make more than minimal progress in reading."[3] (Doc. # 20-1 at 11). Specifically, the Board argues that *Endrew* does not call upon a hearing officer to ask how much progress the child made, but whether the school district created an IEP for the child that is "reasonably calculated to enable [a] child to make progress appropriate in light of [the child's] circumstances." (Doc. # 16 at 7); *Endrew*, 137 S. Ct. at 1001. Therefore, the Board contends that under *Endrew*, a mere "lack of progress" does not itself equate to an inadequate and/or "deficient" IEP, contrary to the hearing officer's conclusion. (*Id.* at 15).

The Board cites a Third Circuit decision in support of its argument. *Colonial Sch. Dist. v. G.K. by and through A.K.*, 763 F. App'x 192, 196 (3d Cir. 2019). In *G.K.*, the court recognized that "an IEP is not guaranteed to produce any particular outcome," and that "the measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date." *Id.* at 196; *see K.B., by and through Dunn v. Downington Area Sch. Dist.*, 904 F.3d 248, 255 (3d Cir. 2018) (noting that a child's "slow progress [did] not prove that her IEPs

---
[3] This question was framed slightly differently elsewhere in the hearing officer's order. Specifically, the hearing officer asked "whether or not the IEP provided [to Student], was not only reasonable, but whether or not it enabled the child to make progress." (Doc. 20-1 at 19).

6

were deficient."); *id.* at 255 ("We may not rely on hindsight to second-guess an educational program that was reasonable at the time.").

Of course, Third Circuit precedent is not binding on this court. But in this instance it is highly persuasive. The *G.K.* decision is certainly consistent with the Supreme Court's teaching that decisions regarding a student's educational program are afforded "deference . . . based on the application of expertise and the exercise of judgment by school authorities." *Endrew*, 137 S. Ct. at 1001. Therefore, the court must give appropriate deference to the program the Board structured for Student in this case.

The hearing officer noted that "to the [Board's] credit, [Student's] IEP team consistently reviewed and modified her IEP and steadily increased the amount of reading instruction she receives every year, . . . [and the Board] also implemented various different methods to increase her reading skills." (Doc. # 20-1 at 14). Indeed, as the hearing officer specifically noted:

> Each year, [Student's teacher] created an individualized reading program for [Student] comprised of . . . what she thought were the most potentially effective components of the various reading programs that were available to her based on [Student's] needs. She also collaborated with [Student's] regular classroom teachers to provide guidance to them regarding what instructional techniques they could use in the classroom to assist [Student], as did the school and county reading specialists. [Student's] regular education teachers also worked with [Student] on specific reading skills such as sight words and decoding in their classes.

(*Id.* at 15). The Order discussed how Student's teacher "engaged in more one-on-one instruction with [Student] as the curriculum [became] more challenging in the third and fourth grade." (*Id.*). A careful review of the administrative record makes clear that the Board took into account Student's particular and unique circumstances to formulate the IEP.

The hearing officer stated that "despite all the resources and efforts of the teachers and support personnel, . . . the [Student] has remained at the pre-primer-primer level in reading

abilities, reading goals have been repeated, and reading goals have not been mastered."[4] (Doc. # 20-1 at 1). However, the appropriate standard is not how much Student has progressed, but rather the adequacy of the IEP at its inception. *D.J.D., by and through Driver v. Madison Cty. Bd. of Educ.*, 2018 WL 4283058, at *5 (N.D. Ala. Sept. 7, 2018) ("An [IEP] must be evaluated in light of the 'snapshot rule,' which instructs a reviewing court to judge an IEP not in hindsight. . . . The court must base its decision . . . on the information that was reasonably available to the parties at the time of the IEP." (internal quotation marks omitted)).

The hearing officer interpreted *Endrew* to mean that "the IEP must aim to enable [a] child to make progress." (Doc. # 20-1 at 18). While *Endrew* certainly includes that language, that is not at all surprising. "A substantive standard not focused on student progress would do little to remedy the pervasive and tragic academic stagnation that prompted Congress to act." *Endrew,* 137 S. Ct. at 999. And, the court is aware that *Endrew* also emphasizes the "reasonably calculated" standard -- focusing on the particular child -- that must be employed when reviewing the sufficiency of an IEP. *Id.* at 999.

To be clear, the record does not suggest that Student made *no* progress whatsoever. The hearing officer reiterated a segment of Student's fourth grade teacher's statement, which is enlightening for purposes of understanding whether Student was progressing, albeit slowly:

> [Student] has made minimal progress. She is a very auditory learner. She does well answering all questions about stories that are read to her. She participates in each of the group activities that we do. She - you know, her - I know she struggles with decoding. We work in small group with decoding which is learning to word call. But her auditory comprehension is very good. She is an active member in our classroom. She works well with her peers. They work well with her. She other than struggles with reading is a typical fourth grade student.

---

[4] In the midst of the hearing officer's conclusion that the IEP is deficient due to Student's lack of progress, he quite clearly notes that the "IEPs do evidence an effort to address" Student's "ongoing issue with reading and decoding." (Doc. # 20-1 at 16). This suggests to the court that the Board drafted the IEP to meet Student's educational needs, even if it did not result in the progress that was anticipated.

8

(Doc. # 20-1 at 19). Notwithstanding the insufficiency of progress found by the hearing officer, *see Endrew*, 137 S. Ct. at 1001, the record establishes that the IEP was crafted to allow Student's teachers and the Board to aid with satisfactory progress, even if some goals were repetitious. The hearing officer stated that he was concerned about the repetitive curriculum with respect to Student's 2nd, 3rd, and 4th grade reading levels. (*Id.* at 21). The hearing officer cited *Damarcus, by and through K.S. v. Dist. of Columbia*, 190 F. Supp. 3d 35 (2016), for the proposition that repetitious IEPs can be problematic. But *Demarcus* involved a 16-year-old student who only received "cut and paste" goals in each IEP, which caused him frustration while learning the same concepts over and over. *Id.* at 53. Many of his teachers also "wrote him off as having plateaued." *Id.* That is simply not the case here.

Here, Student is nine years old. The administrative record indicates that she has been unable to fully grasp the concepts taught. There is no evidence, as the hearing officer pointed out, that Student's teachers have written her off as just having "plateaued." Rather, the record is replete with information indicating that Student has a deficiency in her reading skills and that her teachers were designing plans to address that challenge.[5]

Again, whether Student did in fact progress as anticipated is not the question in front of the court. Rather, the question is the adequacy and sufficiency of the IEP. The hearing officer's ruling was based on the former, not the latter. Therefore, the court is satisfied that the Board has demonstrated a likelihood of success on the merits.

---

[5] In light of that, and given that Student is not progressing as was anticipated with the IEPs, it would seem counterintuitive for the Student's IEPs to cover new material that is more challenging when the current material was not being learned or dealt with proficiently. As one of Student's instructors, Ms. Reeves, stated to the hearing officer that "[i]n second grade, we started the Foundations Wilson program. Her IEP goal in second grade was geared more towards sight words. But that doesn't mean that I cancel out working on decoding and blending. We still worked on all aspects of reading. And that program has a sight word component as well as blending and a phonics portion to it. It does a multisensory approach . . . . So in third grade, we continued the same program because she had only been using it for a year." (Doc. # 20-1 at 15). So, to the extent that the hearing officer was concerned about repetition, there is clearly a valid purpose for certain repetitive instructional programs.

9

### b. Irreparable Injury to Moving Party

"[S]imply showing some possibility of irreparable injury, fails to satisfy [the irreparable harm] . . . factor." *Nken*, 556 U.S. at 434-35 (internal quotation marks omitted). A stay is appropriate to preserve the Board's right to appeal what it considers to be an erroneous decision. *Dist. of Columbia v. Masucci*, 12 F. Supp. 3d 33, 41 (D.D.C. 2014). The Board contends that "if interim compliance is required, . . . the result will be to effectively deprive the Board of its statutory right to appeal what it perceives to be an erroneous decision." (Doc. # 16 at 22). The Board also suggests that it will be precluded from fully defending itself against Student's inevitable claim for attorney's fees. (*Id.*). The Board cites *Masucci* in support of its argument that its claim on appeal may become moot if a stay is not granted. *Masucci*, 13 F. Supp. 3d at 41.

Here, the court finds that were the motion to stay enforcement not granted, the Board's claim on appeal would likely become moot. Indeed, one of the remedies imposed by the hearing officer was to begin in the summer of 2019, which has already come and gone, and the other is to continue through the 2019-2020 school year, which has already begun. Therefore, a stay is warranted in light of the circumstances, not only to re-evaluate the remedies furnished by the hearing officer, but also to ensure the Board's claim does not become moot.

### c. Irreparable Injury to Non-Moving Party

Although the Board has established that it is likely to succeed on the merits and it will be irreparably injured, the court will not issue a stay if these considerations are outweighed by the risk of irreparable injury to the non-movant (Student). The proposed remedies sought in this case include having the "IEP team. . . reconvene in further efforts to determine what programs would be appropriate for the child in light of her reading deficits," and "compensatory services for 90 minutes per school week . . . for the 2019-20 school year in a one-on-one direct reading instruction

scenario to address her weakness in decoding and sight words with a program that meets her unique needs." (Doc. # 20-1 at 25). The court is doubtful that a stay would harm Student because she is still under the instruction of her IEP, which is tailored to her educational needs "each year" (*see Id.* at 15), and she already receives individualized instruction from her special education teacher, Ms. Reeves. (*Id.*) ("Reeves created an individualized reading program for [Student] comprised of the what she thought were the most potentially effective components of the various reading program s that were available to her based on [Student's] current needs.").

Therefore, the court does not foresee any harm that might come to Student as a consequence of a stay of enforcement. The Board is under a continuing obligation to continue individualized instruction for Student, as well as develop IEPs tailored to her particular needs that aim to help her progress. *See* 20 U.S.C. §§ 1400, 1415(i)(2)(A).

**d. Public Interest**

"Public interest considerations weigh slightly in favor of a stay." *Masucci*, 13 F. Supp. 3d at 41. The Board argues that it is in the public interest to maintain the right to appeal to ensure a "timely disposition of disputes." (Doc. # 16 at 25). Student argues that "improving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency." (Doc. # 21 at 8). However, the record indicates that the Board is doing everything in its power to ensure Student has the best chance at success given her unique learning circumstances, and in any event, denying the Board's motion would not, in and of itself, improve educational results for children with disabilities. Therefore, it would seem to be in the public interest to grant the Board's motion to stay enforcement.

**IV.     Conclusion**

The court finds that the Board has shown a substantial likelihood that it will prevail on appeal, the Board faces irreparable injury if a stay is not granted, the risk of irreparable injury to Student is low, and public interest considerations weigh slightly in favor of a stay. Consequently, a stay is due to be issued.

For the reasons discussed above, the court finds that the Board's Motion to Stay Enforcement is due to be granted.[6] A separate Order will be entered.

**DONE** and **ORDERED** this October 3, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[6] The Board argues that because it met, with respect to Student's IEPs, the FAPE standard in *Endrew*, it should not be required to pay Student's attorney's fees. However, it is not appropriate for the court to evaluate any associated fees in this case until resolution of the appeal.